[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO QUASH (#157.00)
BACKGROUND:
CT Page 5153
During pendente lite proceedings in the above matter, the Defendant submitted sworn financial affidavits on two occasions. One such affidavit, dated August 23, 1999, represented his total assets in the amount of $686,650, which included one half the equity of the marital residence in the amount of $182,500. The second, on November 10, 1999, showed $680,650, again including one half the equity of the marital residence in the amount of $182,500.
On March 7, 2000, the Plaintiff took the deposition of Susan Center, a vice president of First Union National Bank. At this deposition, Ms. Center produced a letter to the Defendant from his estate planning attorney, Attorney Steven E. Ayres. This letter from Attorney Ayres dated January 21, 2000 enclosed drafts of a will and trusts and a copy, with draft documents, was sent to Ms. Center at First Union National Bank as backup executor and trustee. Attorney Ayres' letter indicated that he had "prepared these documents based on . . . data on your assets, set forth in yourConfidential Estate Inventory dated 20 Dec. 1999, showing assetstotaling about $911,000, all in your own name." (Emphasis added).
On February 29, 2000, the Plaintiff renoticed the deposition of Attorney Ayres and included a production request for "any and all records, documents, papers and/or memoranda provided to you by Mark S. Sheetz [the Defendant] regarding his assets and liabilities."
The Defendant, on March 10, 2000, filed a Motion to Quash to prevent the Plaintiff from obtaining the list of his assets he had provided to Attorney Ayres based on attorney-client privilege.
DISCUSSION and DECISION:
The attorney-client privilege is designed to protect "communications between client and attorney made in confidence for the purpose of seeking or giving legal advice." Ullman v. State,230 Conn. 698, 711, 647 A.2d 324 (1994). The aim of the privilege is to promote freedom of consultation of legal advisers by clients and the administration of justice. 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2291, p. 545; 1 McCormick, Evidence (2nd Ed. 1972) § 95, p. 229. Exceptions have been carved to avoid use of the privilege as a sword or weapon to enable persons to carry out contemplated crimes or fraud. McCormick, supra, § 95, pp. 381-82. For example, Rule 1.6(c) (2) of the Rules of Professional Conduct provides that a lawyer may reveal information relating to the representation of the client to the extent the lawyer believes that it is necessary to "[r]ectify the consequence of a client's criminal or fraudulent act in the commission of which the lawyer's services had been used." Rule 3.3 CT Page 5154 (a)(2) states that "[a] lawyer shall not knowingly . . . fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client. . . ." Similarly, it has been held that the privilege does not apply to information imparted to an attorney by a client in the course of perpetuating a fraud on the court. Bersani v. Bersani,41 Conn. Sup. 252, 255, 565 A.2d 1368 (1989). In such situations "the term `fraud' is given an expansive reading . . . beyond traditional tort or criminal law definitions." Id., 255.
To resolve the conflict between the "candor" necessary for effective legal advice and the need for full disclosure in courts, our Supreme Court has adopted a balancing test suggested by Wigmore: "a trial court should honor the privilege if and only if [t]he injury that would inure to the [attorney-client] relation by the disclosure of the communicatio[n] [is] greater than the benefit thereby gained for the correct disposal of the litigation' . . . 8 Wigmore [Evidence (McNaughton Rev. 1961)] supra, 2285(4), p. 527." State v. Cascone,195 Conn. 183, 189, 621 A.2d 1365 (1985).
If the injury to the attorney-client relationship resulting from disclosure is greater than the benefit to the adjudicative process, the privilege should be upheld. State v. Williams, 30 Conn. App. 654,658, 621 A.2d 1365 (1993). This fact-specific balancing test applies to both criminal and civil cases. Cloutier v. Liberty MutualInsurance, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 278184 (March 6, 1998, Mottolese, J.) (21 Conn.L.Rptr. 472, 473). Courts cast the balance in favor of disclosure by requiring only that the one who seeks to avoid the privilege produce evidence from which the existence of an unlawful purpose could reasonably be found. 1 McCormick, Evidence (5th Ed. 1999) § 95, p. 382 n. 8 and n. 9.
In the instant case, the Plaintiff has clearly made a prima facie case for disclosure. The two financial affidavits of the Defendant, submitted within months of his attorney's letter referencing a list of more assets than shown on two affidavits, suggests possible fraud on the Plaintiff and on the court. The "confidential estate inventory" referenced in the attorney's letter must be disclosed if the Plaintiff and the court are to understand the nature of the Defendant's assets and their values. It is essential, in a dissolution action, that the court be able to rely upon the truth and accuracy of the financial affidavits submitted. Casanovav. Casanova, 166 Conn. 304, 305, 348 A.2d 668 (1974). A misrepresentation of assets cannot be tolerated as it goes to the very heart of the judicial proceeding. Id., 305; Grayson v. Grayson, CT Page 51554 Conn. App. 275, 694 A.2d 576, appeal dismissed, 202 Conn. 221,520 A.2d 225 (1987). Applying the "fact specific balancing test", disclosure is required because without this disclosure the Plaintiff would lack information on key elements and central issues related to her case.
The Defendant's Motion to Quash is therefore denied.
HILLER, J.